No. 72.—SMITH & MERRITT, plaintiffs in error, *vs.* DAVID DICKSON and JOHN HARRIS, defendants in error.

[1.] An execution which has been levied, and upon which is an entry by the Sheriff of, *levy indefinitely postponed by the plaintiff's attorney,* is sought to be enforced by a sale of the property levied on, more than seven years after the date of the entry: *Held* to be void, upon illegality put in by the defendant in execution, under the Act of 1823.

Affidavit of illegality, in Newton Superior Court. Heard and decided by Judge STARK, September Term, 1850.

An execution in favor of the plaintiffs in error against the defendants in error, was issued the 13th day of October, 1840, on a judgment rendered on the 1st day of October, 1840.

On the *fi. fa.* there was a levy on real and personal property, bearing date 25th day of December, 1840, and an entry, as follows: "The above levy, advertised for sale the first Tuesday in February, 1841, and postponed by plaintiff's attorney to the first Tuesday in March, 1841, and then postponed indefinitely by said plaintiffs' attorney." The bond given for the delivery of

the property levied on had been, by order of Court, turned over to the present Sheriff of Newton County, whose proceeding was estopped by the interposition of an affidavit of illegality by the defendants, on the ground, " That from and after the 1st Tuesday in March, 1841, until the present time, viz: 24th October, 1849, no return hath been made on said *fi. fa.* by the proper officer for executing and returning the same, and that consequently the judgment on which said *fi. fa.* is founded is void and of no effect."

On the hearing of the affidavit of illegality, plaintiffs introduced Jno. N. Williamson, the attorney of record, in obtaining the judgment, who testified, that after the levy had been made, the defendant (Harris) applied to him to have the sale postponed, which was done for one month. At the next sale day, Harris again made application to have the sale postponed indefinitely, and requested the witness to write to all plaintiffs in execution, and ascertain if a compromise could not be effected. The proposition was agreed to by the witness, as there was a mortgage on all or a greater part of the property levied on. Under this arrangement, (a bond being given for the delivery of the property,) witness ordered the sale to be indefinitely postponed.

The Court sustained the affidavit of illegality, on the ground that the *fi. fa.* had become dormant under the operation of the Statute of 1823.

W. W. CLARK, for plaintiffs in error.

REESE, for defendants.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] There was a levy of this execution, and the property was advertised for sale on the first Tuesday in February, 1841. By the entry of the Sheriff on the execution, it appears that the sale was postponed by order of the plaintiffs, to the first Tuesday in March following, and *then postponed indefinitely by the plaintiffs' attorney.* The last entry, then, on the *fi. fa.* is in

March, 1841, more than seven years anterior to the present attempt to enforce the execution by a sale under this indefinitely postponed levy. The illegality claims, that the execution is barred by lapse of time, and so the Court held, and this decision is assigned for error. There is no entry or return of any kind on the *fi. fa.* within seven years, as required by the Statute. It is argued, however, for the plaintiffs in error, that the levy being postponed by the plaintiff, and that being entered, there is a continuous action on the execution—the levy subsisting until it is disposed of; and farther, that the entry of *indefinite postponement*, is an entry, as it were, with a *continuando*. If the argument was not presented in just this form, yet such must be its structure, to possess even the shadow of plausibility; because the Statute does positively declare all judgments void after seven years, unless there is an entry or return upon it within seven years. The seven years having elapsed in this case, it became indispensable for the plaintiff in error, upon some hypothesis, to make out an entry. Now, it strikes me that an *indefinite* postponement of a levy is a dismissal. To what time is the sale postponed? To no time. If the levy thus postponed be a valid, subsisting levy for one year, why not for seven? and if for seven, why not for seventy? It may be questionable whether a levy can be good after a specific postponement of the sale beyond the next sale day. To be good, the postponement must be to a time certain. Certainly an indefinite postponement does not retain the levy. To my mind it is palpably an abandonment of the levy by the plaintiff. But admit, for the sake of the argument, that such an entry retains the levy and keeps the execution alive, how long does it keep it alive? Is it to be presumed that it over-rides a Statute and keeps it alive in the teeth of the law? If it can—if such an entry prevents the dormancy of the judgment—then it is competent for a plaintiff to sit down and, by an entry on his *fi. fa.* defeat, over-ride, nullify an Act of the Legislature. The law declares that there must be an entry within seven years, and the plaintiff says, " True, but I postpone to-day my levy indefinitely, which prevents the operation of the law— which preserves the vitality of my *fi. fa.* not only for seven

years, but for any number of years." If an execution is not barred in seven years after such an entry, when is it barred? The answer is, never; and if that is so, has not the entry abrogated the law? If it is a valid entry at all, it is good only as any other entry would be that is to prevent the execution from becoming dormant within seven years from its date. This Court has held, and we still hold, that the Statute requires an entry every seven years. The Act of 1823, is intended for the benefit of *bona fide* purchasers and junior judgment creditors. The object is to prevent injury to them by fraudulently keeping open judgments which are paid. It, to effect this object, prescribes a term of limitation; but this term does not bar if, within it, entries are made on the execution, which show it to be *prima facie*, subsisting and unpaid—entries which exhibit diligence on the part of the plaintiff to prevent a bar. Purchasers and junior creditors are not benefited by the lapse of time, if there be such entries, and upon what principle? Why, the entries are notice to them, the *fi. fa.* being open to the inspection of the world, that it is still a subsisting, unpaid judgment. But is such an entry as this notice? What are people to infer when they find on an execution an order of the plaintiff indefinitely postponing a levy—indefinitely postponing *the means of realizing his money?* They must infer that the plaintiff has got his money, and, therefore, he has forever postponed his levy.

The plaintiff in error takes another position equally indefensible. It appears, by the evidence, that the indefinite postponement of this levy was at the instance of the defendant, and by an arrangement with him. Now, it is said, first, that this evidence rebuts the presumption of any fraudulent intent on the part of the plaintiff to keep the execution alive and open. Let that be so. Yet this part of the transaction does not appear on the execution; it exists in parol. Nobody is notified by it. Purchasers and other creditors know nothing about it. Besides, the Statute says not one word about arrangements and agreements between plaintiff and defendant, but it does say, that there must be an entry on the *fi. fa.* to prevent the bar. Arrangements and fraudulent collusion between plaintiff and defendant are the

very things which the Act intends to prevent. It will not do to prove an arrangement between them and then assume it to be honest. It is *the arrangement* which it intends to prevent. We cannot recognise any arrangement, not appearing on the execution, as arresting the limitation. Secondly, *it is said, there are* no creditors or purchasers here contesting this judgment, but the defendant alone, and that he is not to be heard when he comes into Court to take the benefit of a bar, which has grown up under an arrangement to which he was a party, and which was in fact proposed by him. True, there are no creditors or purchasers before the Court, but it does not follow that there are none. But if there were none, what then? Why, it is the duty of the Court to sustain the Statute, for the sake of creditors and purchasers in all similar cases. The construction of the Statute is before us, and from that we cannot shrink. If, however, by this record the question were made, (which is not,) whether the defendant could make the question of the validity of this judgment, we should still have no difficulty about it. The Statute, as before stated, requires entries to be made to prevent the judgment becoming dormant. To defeat the Statute an agreement is made between plaintiff and defendant, or if not to *defeat it*, yet which is clearly against the policy of the Statute. The defendant is seeking to avail himself of it, by setting up the bar of the Statute, which has been perfected in consequence of it. In such a case what is the rule? "*In pari delicto portior est conditio defendentis.*" The plaintiff attempting to enforce the judgment under an agreement in violation of law, the defendant, though equally guilty with him, may be heard in defence, not because the law regards his rights, but for the sake of the public policy. *Adams vs. Barrett,* 5 *Ga. R.* 415, 416.

Let the judgment be affirmed.